IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LARRY CARTER, | ) | CASE NO. 8:06CV603 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| THE ADVISORY GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

The matter before the Court is the Defendant's Motion for Partial Summary Judgment (Filing No. 35), in which the Defendant, The Advisory Group, Inc. ("Advisory"), asks this Court for an order granting summary judgment on one of the Plaintiff Larry Carter's ("Carter") two causes of action. The matter has been fully briefed and is ripe for disposition. For the reasons stated below, Advisory's motion will be denied.

**Procedural Background**

Carter filed this action with the Court on September 21, 2006, invoking the Court's diversity jurisdiction. (Filing No. 1). Carter has averred that the amount in controversy exceeds $75,000,[1] and that Carter is a resident of Nebraska while Advisory is incorporated and principally conducts business in California. Although no party currently contests this Court's subject matter jurisdiction, I have conducted an independent review and find that this Court does have diversity jurisdiction under 28 U.S.C. § 1332(a).

Both parties cite primarily to Nebraska law to support their respective positions. The parties agree Nebraska is the forum state and the state in which many of the events giving

---

[1] Although I have not found in the record the sum Carter claims to be contractually owed, no party currently disputes that the amount in controversy exceeds $75,000. (Filing No. 47, p. 3 ¶ 6; Filing No. 62, p. 3 ¶ 6). Consequently, for purposes of this motion, I find that the amount in controversy in fact exceeds the jurisdictional minimum.

rise to the causes of action occurred.  (Filing No. 47, p. 3 ¶ 7; Filing No. 62, p. 3 ¶ 7). Accordingly, this Court will apply the substantive law of the State of Nebraska.  *See Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997) ("In a diversity case, a federal court applies the choice of law rules of the forum state."); *Jaramillo v. Mercury Ins. Co.*, 494 N.W.2d 335, 339 (Neb. 1993) ("[T]he validity of a contract is to be determined by the lex loci contractus, that is, by the law of the place where the contract was made . . . .").

**Facts**

*A. Uncontroverted Facts*

The parties have submitted briefs in support of and in opposition to the Motion for Partial Summary Judgment, in compliance with NECivR 56.1.  The following facts are those stated in Advisory's brief (Filing No. 47), supported with pinpoint citations to its index of evidence (Filing No. 36), that Carter, in his brief (Filing No. 62), has specifically acknowledged to be true or, in the case of a disputed or partially disputed paragraph, has not resisted, as required by NECivR 56.1.[2]

This case involves a dispute over the division of a fee ("Fee") related to services rendered to Castle Harlan ("Harlan"), a private equity business, in its purchase of C & T Malt ("Malt"), an international barley malting concern.  (Filing No. 47, pp. 2–3 ¶ 1).

---

[2]"The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies.  Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response."  NECivR 56.1 (b)(1).

Advisory is an entity[3] currently owned by David Willensky ("Willensky"), an individual with experience in the field of mergers and acquisitions, that provides services to parties looking to buy or sell companies. (Filing No. 47, p. 3 ¶¶ 3, 5). Willensky either works individually or selects others to perform various roles in Advisory's business transactions. Through Advisory, Willensky and Carter worked together on the possible Harlan/Malt transaction. (Filing No. 47, pp. 3–4 ¶ 8). Until the deal between Harlan and Malt closed, Advisory never had assurances it would ultimately receive the Fee because such fees are contingent upon a transaction closing. (Filing No. 47, p. 5 ¶ 17).

On or about July 28, 2006, Willensky e-mailed Carter to tell him that the Malt deal would probably close. The two began to discuss the Fee distribution, but it was quickly apparent that the two did not agree on how the Fee should be distributed. (Filing No. 47, pp. 5–6 ¶ 19). After a series of e-mails between the two, wherein Carter stated the Fee splitting agreement was 50/50 and Wellinsky stated that the two never agreed to an equal Fee sharing, Carter wrote a lengthy e-mail to Willensky, which included the following:

> I apologize that it has taken me a few days to get back to you. I wanted to talk with a lawyer to ensure that my understanding of my legal rights was correct. I have now done that . . . .
>
> From a legal perspective the facts are overwhelming that, at a bare minimum, we had an implied agreement to jointly pursue the malt deal. That being the case, under the law, we have a contract, and the relevant matter is what are the terms and conditions of that agreement. Since what is really at issue is the fee sharing arrangement, I will comment only on that aspect.

---

[3]Carter's Complaint avers that Advisory is a corporation (Filing No. 1, p. 1 ¶ 2). However, his brief in opposition states that The Advisory Group was not incorporated when the events relevant to his causes of action transpired; rather, Carter states that The Advisory Group was, at the time, a trade name used by Willensky. (Filing No. 62, p. 3 ¶¶ 3–4).

> Under standard contract law the question arises as to whether there was a meeting of the minds on the fee sharing agreement.  There is no written record of our discussions and we have conflicting opinions.  Your position is that we had no discussion of fees, while I say that we agreed to a 50/50 split.  *Therefore by definition we did not have a meeting of the minds on fees in which case the question becomes the intent and reasonable expectations of the parties.*
>
> Notwithstanding the fact that I believe we did agree to 50/50, under standard contract law, the fact that we had no fee discussions does not in any way make my rights unenforceable . . . .
>
> [O]ur deal history decisively supports my position.  Excluding malt, we have worked on 3 deals - Carlyle/Saprogal and 21st Century, prior to the malt deal, and CAPROC after malt.  All 3 were 50/50 fee arrangements.
>
> . . . .
>
> [E]ven if we had no fee discussion as you claim, it was reasonable for me to assume it was 50/50 absent any evidence that we agreed to alternative terms, or that I was otherwise notified that 50/50 was not our arrangement on malt. . . .

(Filing No. 36-3, pp. 3–5 (emphasis added)).  Carter has filed suit against Advisory, averring that Advisory has a contract with Harlan that entitles it to collect the Fee, and that Carter has an actual or implied contract with Advisory that entitles him to fifty percent of the Fee.  (Filing No. 1, p. 3 ¶¶ 14, 18).

### *B. Controverted Facts*

Carter claims that he had a conversation with Willensky in or about March or April 2004, the substance of which is the following:

> Carter:     I think Malt is at least worth a shot.
>
> Willensky:  OK.  I think Wind Point might be our best option at this point.  I know you have said that you probably aren't interested in a management role but what do you want me to say, since I'm sure they will ask the question?

4

| | |
|---|---|
| Carter: | You should make it clear that I have no interest in any type of day-to-day management role. |
| Willensky: | Would you at least consider some nonmanagement or part time role, maybe even nonexecutive chairman? |
| Carter: | I'm not too excited about making any up-front commitment . . . I guess you can tell them once the deal is closed, if WP wanted, I would at least consider a part time role such as a consultant/advisor . . . . |
| Willensky: | OK. |
| *Carter:* | *OK. Then we'll proceed the same as before, we split the fee 50/50, I don't get paid unless you get paid and each of us is responsible for our own expenses.* |
| *Willensky:* | *OK.* |

(Filing No. 62, p. 10 ¶ 35 (emphasis added)). Carter also claims that he and Advisory worked on at least three other transactions that involved a 50/50 fee sharing arrangement, and that at least one of these other 50/50 fee arrangements was an oral fee sharing arrangement. (Filing No. 62, p. 8 ¶¶ 26–27). Carter claims that he never agreed to accept less than a fifty percent share of any fees collected in connection with any transaction at any time. (Filing No. 62, p. 12 ¶ 41).

**Standard of Review**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis

5

for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

**Discussion**

Advisory argues that Carter's statement — that "by definition we did not have a meeting of the minds on fees" — signifies his conclusion regarding what all the facts mean to him, is controlling, and should be treated as a clear admission that an essential element

6

of contract formation is absent.  Accordingly, Advisory argues that this Court should grant partial summary judgment in its favor on the actual or implied contract cause of action, leaving only a quantum meruit action.  Carter, on the other hand, argues that Advisory's sole focus on Carter's statement disregards the context in which it was made, and ignores the other evidence that demonstrates the existence of an actual or implied contract.  In this regard, Carter argues that there is sufficient evidence to defeat Advisory's partial summary judgment motion.

### *A. Effect of Carter's "Legal" Statement*

Both the Nebraska Supreme Court and the Eighth Circuit Court of Appeals have held that a court should not focus solely on a single legal statement made by a nonlawyer to decide an issue of law.  Rather, these court's have found that the nonlawyer's legal statement should be examined in light of all the surrounding evidence.  *See Neb. Builders Prods. Co. v. Indus. Erectors, Inc.*, 478 N.W.2d 257, 269 (Neb. 1992) ("We do not hereby hold that an admission is made whenever [a party] utters the magic words . . . .  We acknowledge the possibility that laypeople might misuse legal terminology. We therefore suggest that if a party . . . uses contractual terminology, the court should look at the other evidence presented . . . ."); *see also Dush v. Appleton Elec. Co.*, 124 F.3d 957, 964 (8th Cir. 1997) (finding that other evidence demonstrated the speaker possessed "a clear enough understanding" of the legal term used to hold her to an admission, although opining that, "in a proper situation, we might see fit to look past a nonlawyer's unknowing and unintended concession on a discrete question of law").  Consequently, I do not find that Carter's one statement "reigns supreme," as Advisory suggests, or that the additional

facts Carter offers to support the existence of an actual or implied contract are irrelevant. I will consider all of the evidence before the Court to adjudicate Advisory's motion.

***B. Actual or Implied Contract Cause of Action***

In Nebraska, to create a contract, "there must be both an offer and an acceptance [and] there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract." *Gerhold Concrete Co. v. St. Paul Fire and Marine Ins. Co.*, 695 N.W.2d 665, 672 (Neb. 2005) (citing *Neb. Nutrients, Inc. v. Shepherd*, 626 N.W.2d 472 (Neb. 2001)). "A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties themselves as to all the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances." *Id.* (citing *Neb. Nutrients*, 626 N.W.2d 472). Similarly, "the acceptance of an offer may be shown by words, conduct, or acquiescence indicating agreement." *Hoeft v. Five Points Bank*, 539 N.W.2d 637 (Neb. 1995). Except in the clearest of cases, the question of "whether the parties intended to contract is a factual one, not a legal one . . . for the finder of fact to resolve." *Gerhold Concrete*, 695 N.W.2d at 672 (citing *Viking Broad. Corp. v. Snell Publ'n Co.*, 497 N.W.2d 383 (Neb. 1993)).

As stated before, I find that it would be improper to view Carter's statement in a vacuum; rather, I will consider all of the evidence before me. In this case, I note that Carter has produced evidence that there was an agreement between Advisory and himself, wherein Advisory (through Willensky) orally contracted to share the Fee with a 50/50 split. Further, Carter has produced evidence of prior dealings between himself and Advisory that

could serve as conduct that establishes "a meeting of the minds." *See Mid-Am. Expositions, Inc. v. City of Omaha*, 2000 WL 704970, at *7 (Neb. App. May 30, 2000) ("[The defendant] and [the plaintiff] agreed through their course of dealings over the past 30 years that the rate that would be charged for the home shows was the standard flat rate. There is no issue of material fact as to what rate would be charged [the plaintiff], as it had always been the same.").

Contrary to Advisory's position, I do not find these to be the clearest of circumstances warranting judgment as a matter of law. Consequently, under Nebraska law, the strength of such evidence is not for this Court to decide, and I will deny Advisory's motion.

IT IS ORDERED: The Defendant's Motion for Partial Summary Judgment (Filing No. 35) is denied.

DATED this 17th day of May, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge